Joshua Pond
The Law Office of Siefman & Pond
707 SW Washington St #1410
Portland, Oregon 97205
Tel: 503-894-5534
Email: josh@bettercallalawyer.com

*Attorneys for Plaintiff and the Putative Class*

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **SANDRA POON,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>*v.*<br><br>**VOW TO BE CHIC, INC.**, a Delaware corporation.<br><br>*Defendant*. | Case No. :<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

### CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Sandra Poon ("Poon" or "Plaintiff Poon") brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendant Vow To Be Chic, Inc. ("VTBC" or "Defendant VTBC") to stop its practice of sending unsolicited text messages to cellular telephones without the recipient's prior express written consent and to obtain redress for all persons injured by its conduct. Plaintiff Poon, for her Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

CLASS ACTION COMPLAINT – 1

## NATURE OF THE ACTION

1.      Defendant VTBC is a company that offers bridesmaids dresses for purchase and for rent and markets its products and services to consumers throughout the United States.[1]

2.      Unfortunately for consumers, Defendant casts its marketing net too wide. That is, in an attempt to promote its business and services, Defendant conducted (and continues to conduct) a wide-scale telemarketing campaign that features the sending of repeated and unwanted solicitation text messages to consumers' cellular telephones without consent – and even those whose numbers appear on the National Do Not Call Registry - all in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA").

### A.  Bulk SMS Marketing

3.      In recent years, marketers who have felt stymied by federal laws limiting solicitation by telephone, fax machine, and e-mail have increasingly looked to alternative technologies through which to send bulk messages cheaply.

4.      Bulk text messaging, or SMS marketing, has emerged as a new and direct method of communicating and soliciting consumer business. The term "Short Message Service" or "SMS" is a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 160 characters. An SMS message is a text message call directed to a wireless device through the use of the telephone number assigned to the device.

5.      When an SMS message call is successfully made, the recipient's cell phone alerts him or her that a message has been received. As cellular telephones are inherently mobile and are frequently carried on their owner's person, calls to cellular telephones, including SMS messages, may be received by the called party virtually anywhere worldwide and instantaneously.

---

[1] https://www.linkedin.com/company-beta/4804791.

**B. <u>Defendant Transmits Text Messages to Consumers Who Do Not Want Them</u>**

6.    Defendant sends text messages to consumer's cellular telephones in an attempt to solicit business and ultimately increase its bottom line.

7.    Defendant sends text messages from "short code" 69008. A short code is akin to a telephone number for text messages.

8.    In sending these text messages, Defendant took no steps to acquire the oral or written prior express consent of Plaintiff or the Class Members who received the unsolicited text messages.

9.    Defendant sent the same (or substantially the same) text message calls *en masse* to thousands of cellular telephone numbers throughout the United States.

10.    In sending the text messages at issue in this Complaint, Defendant utilized an automatic telephone dialing system ("ATDS"). Specifically, the hardware and software used by Defendant (or its agents) has the capacity to store, produce, and dial random or sequential numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse,* in an automated fashion without human intervention. Defendant's ATDS includes features substantially similar to a predictive dialer, inasmuch as it is capable of making numerous text message calls simultaneously (all without human intervention).

11.    Defendant was and is aware that text messages were and are being made without the prior express written consent of the text message recipients.

**C. <u>Defendant Transmits Text Messages to Consumers Who Have Expressly Opted-Out</u>**

12.    Defendant sends unauthorized text messages to cellular subscribers who have expressly "opted-out" or requested not to receive text messages. But, even if any prior consent existed, Defendant is required to honor each stop-request as a termination of any prior consent. Accordingly, any SMS text message (other than a final one-time confirmation text message

CLASS ACTION COMPLAINT – 3

confirming the recipient's desire to not receive such messages) sent to a cellular subscriber after receiving an express stop request is done without prior express consent.

13.  To help mobile marketers navigate regulatory compliance, the Mobile Marketing Association ("MMA") publishes specific guidelines based on accepted industry practices for all mobile marketers. Those guidelines include industry best practices for processing and honoring stop requests from consumers.

14.  According to the MMA's October 2012 U.S. Consumer Best Practices for Messaging, "[a] subscriber must be able to stop participating and receiving messages from any program by sending STOP to the short code used for that program. . . END, CANCEL, UNSUBSCRIBE or QUIT should also be opt-out key words for all programs; however content providers should feature the word STOP in their advertising and messaging. . . When sent, these words cancel the subscriber's previous opt-in for messaging." Further, "[t]he content provider must record and store all opt-out transactions."

15.  CTIA[2] similarly advises that standards for processing opt-out messages in shortcode programs:

> Functioning opt-out mechanisms are crucial for all text messaging programs. Programs must always acknowledge and respect customers' requests to opt out of programs
> …
> Short code programs must respond to, at a minimum, the universal keywords STOP, END, CANCEL, UNSUBSCRIBE, and QUIT by sending an opt-out message and, if the user is subscribed, by opting the user out of the program. Subsequent text, punctuation, capitalization, or some combination thereof must not interfere with opt-out keyword functionality.[3]

---

[2] The CTIA is an international non-profit organization that audits and enforces the rules surrounding carrier-based text messaging programs. Together, the MMA and the CTIA establish and publish guidelines setting forth accepted industry best practices for mobile marketing.

[3] *See,* CTIA's Short Code Monitoring Program, *Short Code Monitoring Handbook*, Version 1.6, effective July 16, 2016, page 4, available at https://www.usshortcodes.com/info/static/docs/CTIA%20Short%20Code%20Monitoring%20Handbook%20v1.5.2.pdf

CLASS ACTION COMPLAINT – 4

16.     CTIA additionally provides guidance on standards for notifying cellular telephone users about their ability to opt-out of text message programs:

> Recurring-messages programs must also display opt-out instructions at program opt-in and at regular intervals in content or service messages, at least once per month. Opt-out information must be displayed on the advertisement. A program may deliver one final message to confirm a user has opted out successfully, but no additional messages may be sent after the user indicates a desire to cancel a short code program.[4]

17.     Again, Defendant simply ignores these accepted industry guidelines. Instead, Defendant makes it difficult for consumers to opt-out or unsubscribe to its SMS text messages.

18.     Despite receiving numerous express stop requests from cellular subscribers, including Plaintiff, Defendant continues to send automated text messages to these subscribers, sometimes for months or years afterwards.

19.     Defendant knows, or is reckless in not knowing, that its text messages to these cellular subscribers are unauthorized. Reply message stop requests are, by design, sent to Defendant's short code, thereby directly informing Defendant that any subsequent messages are unauthorized. Ultimately, consumers are forced to bear the costs of receiving these unsolicited and unauthorized text messages.

20.     Upon information and belief, and via investigation by Plaintiff's attorneys, each of the text messages sent to Plaintiff and the Classes are affiliated with Defendant.

21.     By sending the text messages at issue in this Complaint, Defendant caused Plaintiff and the other members of the Classes actual harm and cognizable legal injury. This includes the aggravation and nuisance and invasions of privacy that result from the sending and receipt of such text messages, a loss of value realized for the monies consumers paid to their carriers for the receipt of such text messages, and a loss of the use and enjoyment of their

---

[4] *Id.*

phones, including wear and tear to the related data, memory, software, hardware, and battery components, among other harms.

22.    In response to Defendant's unlawful conduct, Plaintiff filed this action seeking an injunction requiring Defendant to cease all unsolicited text messaging activities and an award of statutory damages to the members of the Classes under the TCPA, together with costs and reasonable attorneys' fees.

## PARTIES

23.    Plaintiff Sandra Poon is a natural person and resident of Portland, Oregon.

24.    Defendant is a company organized and existing under the laws of the State of Delaware with a principal place of business located at 3111 3rd St., Apt. 8, Santa Monica, California 90405.[5]

## JURISDICTION AND VENUE

25.    This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331, as the action arises under the TCPA, which is a federal statute. This Court has personal jurisdiction over Defendant because it conducts a significant amount of business in this District, solicits consumers in this District, sent and continues to send unsolicited text messages in this District, and because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

26.    Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant conducts a significant amount of business within this District and markets to this District, and because the wrongful conduct giving rise to this case occurred in and/or was directed to this District. Venue is additionally proper because Plaintiff resides in this District.

---

[5] https://businesssearch.sos.ca.gov/CBS/Detail.

## COMMON FACTUAL ALLEGATIONS

27.    In recent years, companies such as Defendant have turned to unsolicited telemarketing as a way to increase its customer base. Widespread telemarketing recruits new customers.

28.    Text messages, like the ones sent in the instant action, are considered calls under the TCPA. *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014, 14115, ¶ 165 (July 3, 2003); *see also Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 954 (9th Cir. 2009) (noting that text messaging is a form of communication used primarily between telephones and is therefore consistent with the definition of a "call").

29.    As explained by the Federal Communications Commission ("FCC") in its 2012 order, the TCPA requires "*prior express written consent* for all autodialed or prerecorded telemarketing calls to wireless numbers and residential lines." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* CG No. 02-278, FCC 12-21, 27 FCC Rcd. 1830 ¶ 2 (Feb. 15, 2012).

30.    Yet, in violation of this rule, Defendant fails to obtain any prior express written consent to send solicitation text messages to consumers' cellular telephone numbers.

31.    At all times material to this Complaint Defendant was and is fully aware that unsolicited telemarketing calls are being made to consumers' cellular telephones through their own efforts and/or their agents.

32.    Defendant knowingly made (and continues to make) unsolicited telemarketing text messages without the prior express written consent of the recipients and knowingly continued to send text messages to them after requests to stop. In so doing, Defendant not only

invaded the personal privacy of Plaintiff and members of the putative Classes, but also intentionally and repeatedly violated the TCPA.

## FACTS SPECIFIC TO PLAINTIFF SANDRA POON

33.     On April 15, 2017, Plaintiff's number was registered on the federal Do Not Call Registry in order to prohibit telemarketing calls and/or text messages like that ones at issue in this case.

34.     On or around January of 2017, Plaintiff visited the website, https://portlandbridalshow.com, (the "Website") to see about possibly attending a local bridal show (the "Bridal Show").  Plaintiff then filled out the portion of the Website entitled "Bride Registration" and provided the Website with her cellular telephone number as requested. However, before she came to the portion of the Website seeking payment for tickets to the Bridal Show, Plaintiff changed her mind and decided not to purchase tickets.  Plaintiff ultimately never attended the Bridal Show.

35.     However, in late May of 2017 through June, Plaintiff received a series of solicitation text messages from VTBC.

36.     On May 31, 2017 at 1:18 p.m., Plaintiff received a text message from SMS shortcode 69008, which is owned and/or operated by VTBC.

37.     Said text message read, "Hi it's Katie from VOWTOBECHIC. We have an unprecedented 30% off bridesmaid dress & Little White Dress rental offer. Today only use SMS30U"

38.     Frustrated at receiving unwanted texts, Plaintiff responded, "You need to take me off your list[.]"

39.     Despite Plaintiff's request to stop being texted, VTBC still harassed Plaintiff with another text message from SMS shortcode 69008, on June 28, 2017, at 8:01 a.m., which read,

"Hi it's Katie from VOWTOBECHIC.  We have an amazing 30% off Bridesmaid dress rental offer.  TODAY only use WEDDING30 at checkout."

40.    Again, Plaintiff responded, "[y]ou need to take me off the mailing list or I will be reporting this this is my second request."

41.    However, the next day, on June 29, at 3:42 p.m., from SMS shortcode 69008, VTBC still sent Plaintiff another text message.  This text message read, "Hi it's Katie @ VOWTOBECHIC. Yay! Our offer for 30% off of Bridesmaid dress rentals is extended until tomorrow.  Use WEDDING30 at checkout-Reply STOP to Stop."

42.    Images of screenshots displaying the text messages mentioned above are produced below.



43.    Furthermore, Plaintiff's inbound and outbound text-message history, as shown below, reflect Defendant's unwanted solicitation text messages.[6]

```
Wednesday, 05/31
03:18p  Rcvd    69008    Text Message    UNLMSG    0.00
03:59p  Sent    69008    Text Message    UNLMSG    0.00
```

[6] Plaintiff was located in the Central Time Zone when she received Defendant's text messages.

```
Wednesday, 06/28
01:47a  Rcvd    215-840-9399    Text Message    UNLMSG    0.00
10:01a  Rcvd    69008  ←        Text Message    UNLMSG    0.00
12:14p  Sent    69008           Text Message    UNLMSG    0.00
12:14p  Sent    69008           Text Message    UNLMSG    0.00
Thursday, 06/29
12:29p  Rcvd    789537  ←       Text Message    UNLMSG    0.00
05:42p  Rcvd    69008  ←        Text Message    UNLMSG    0.00
06:23p  Sent    67076           Text Message    UNLMSG    0.00
06:23p  Rcvd    67076           Text Message    UNLMSG    0.00
```

44.     Plaintiff did not request that Defendant and/or its affiliates place calls and/or text messages to her or offer her their services using an ATDS.  Simply put, Plaintiff has never provided her prior express written consent to VTBC to send solicitations text messages to her and have no business relationship with VTBC.

45.     Even if Plaintiff would have successfully registered herself as an attendee of the Bridal Show, this would not give the Defendant consent to contact her on her cellular telephone using an ATDS.  As shown in ***Exhibit A***, the Website does not display any language disclosing that by signing up to go to the Bridal Show, she expressly consents to be contacted by an exhibitor on their cellular telephones using an ATDS.

46.     Furthermore, the Website's privacy policy displays no reference with respect to a consumer being contacted by an ATDS and also with respect to compliance with the federal Do Not Call Registry.  *See **Exhibit B.***

47.     By sending unauthorized text messages as alleged herein, VTBC has caused consumers actual harm in the form of annoyance, nuisance, and invasion of privacy. In addition, the calls disturbed Plaintiff's use and enjoyment of her cellular telephone, in addition to the wear and tear on the cellular telephone's hardware (including the cellular telephone's battery) and the consumption of memory on their cellular telephones. In the present case, a consumer could be subjected to many unsolicited text messages as VTBC fails to provide initial instructions for a

consumer to opt-out of receiving text messages, or simply ignores opt out requests that it receives.

48.    In order to redress these injuries, Plaintiff, on behalf of herself and the Classes of similarly situated individuals, bring suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited text messages to cellular telephones.

49.    On behalf of the Classes, Plaintiffs seek an injunction requiring VTBC to cease all wireless text-messaging activities and an award of statutory damages to the Class members, together with costs and reasonable attorneys' fees.

50.    Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of herself and all others similarly situated and seek certification of the following two Classes:

> **Autodialed No Consent Class:** All persons in the United States who from a date four years prior to the filing of the initial complaint in this case through the present: (1) Defendant (or a third person acting on behalf of Defendant) sent solicitation text messages, (2) to the person's cellular telephone number, and (3) for whom Defendant claims it obtained prior express written consent in the same manner as Defendant claims it supposedly obtained prior express written consent to send automated text messages to the Plaintiff.

> **Autodialed Stop Call Class**: All persons in the United States who from a date four years prior to the filing of the initial complaint in this case through the present: (1) Defendant (or a third person acting on behalf of Defendant) sent text messages, (2) on the person's cellular telephone number, and (3) for solicitation purposes, (4) after the person informed Defendant to stop sending them text messages.

> **Do Not Call Registry Class**: All persons in the United States who (1) Defendant (or a third person acting on behalf of Defendant) called more than one time on his/her cellular telephone; (2) within any 12-month period (3) where the cellular telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of selling Defendant's products and services; and (5) for whom Defendant claims it obtained prior express consent in the same manner as Defendant claims it obtained prior express consent to call the Plaintiff.

51.     The following individuals are excluded from the Classes: (1) any Judge or
Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's
subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents
have a controlling interest and their current or former employees, officers and directors; (3)
Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion
from the Classes; (5) the legal representatives, successors or assigns of any such excluded
persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated
and/or released. Plaintiff anticipates the need to amend the Class definitions following
appropriate discovery.

52.     **Numerosity**: The exact sizes of the Classes are unknown and not available to
Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and
belief, Defendant sent autodialed text messages to thousands of consumers who fall into the
definition of the Classes. Members of the Classes can be easily identified through Defendant's
records.

53.     **Commonality and Predominance**: There are many questions of law and fact
common to the claims of Plaintiff and the Classes, and those questions predominate over any
questions that may affect individual members of the Classes. Common questions for the Classes
include, but are not necessarily limited to the following:

(a)  whether Defendant's conduct constitutes a violation of the TCPA;

(b)  whether Defendant utilized an automatic telephone dialing system to send text
messages to members of the Classes;

(c)  whether members of the Classes are entitled to statutory and treble damages
based on the willfulness of Defendant's conduct;

(d)  whether Defendant systematically made multiple telephone calls to consumers
whose telephone numbers were registered with the National Do Not Call
Registry;

CLASS ACTION COMPLAINT – 12

    (e)  whether Defendant obtained prior express written consent to contact any class members; and

    (f)  whether Defendant continued to send text messages after consumers communicated an opt-out.

54.   **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff has no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff.  Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff nor her counsel has any interest adverse to the Classes.

55.   **Appropriateness**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Classes as wholes, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff.  Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

## FIRST CAUSE OF ACTION
### Telephone Consumer Protection Act

**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff the Autodialed No Consent Class)**

56.    Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

57.    Defendant sent autodialed solicitation text messages to cellular telephone numbers belonging to Plaintiff and other members of the Autodialed No Consent Class without first obtaining prior express written consent to receive such autodialed solicitation text messages.

58.    Defendant sent the text autodialed text messages using equipment that had the capacity to store or produce telephone numbers using a random or sequential number generator, to receive and store lists of phone numbers, and to dial such numbers, *en masse*, without human intervention. The telephone dialing equipment utilized by Defendant, also known as a predictive dialer, dialed numbers from a list, or dialed numbers from a database of telephone numbers, in an automatic and systematic manner. Defendant's autodialer disseminated information *en masse* to Plaintiff and other consumers.

59.    By sending the unsolicited text messages to Plaintiff and the cellular telephones of members of the Autodialed No Consent Class without their prior express written consent, and by utilizing an automatic telephone dialing system to make those calls, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii).

60.    Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff and the other members of the Autodialed No Consent Class are each entitled to, under 47 U.S.C. § 227(b)(3)(B), a minimum of $500.00 in damages for each violation of such act.

61.    In the event that the Court determines that Defendant's conduct was willful and knowing, it may, under 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiffs and the other members of the Autodialed No Consent Class.

## SECOND CAUSE OF ACTION
### Telephone Consumer Protection Act
### (Violations of 47 U.S.C. § 227)
### (On Behalf of Plaintiff and the Autodialed Stop Call Class)

62.     Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

63.     Defendant and/or its agent transmitted unsolicited text message calls to cellular telephone numbers belonging to Plaintiff and the other members of the Autodialed Stop Call Class using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*, without human intervention.

64.     The telephone dialing equipment utilized by Defendant and/or its agents, which is substantially similar to a predictive dialer, dialed numbers from a list, or dialed numbers form a database of telephone numbers, in an automatic and systematic manner.

65.     These text messages were made *en masse* and without the consent of the Plaintiff and the other members of the Autodialed Stop Call Class to receive such wireless text messages. Indeed, consent had been revoked by everyone since they each had responded with the common SMS codes to opt-out of further communications, such as (but not limited to) "STOP," "REMOVE," "OPT OUT." or "CANCEL."

66.     Plaintiff and members of the Autodialed Stop Call Class expressly requested that Defendant no longer send text messages to them, after which Defendant failed to place Plaintiff and members of the Autodialed Stop Call Class on Defendant's internal do-not-call list (or failed to do so within a reasonable time period).

67.     The text messages to Plaintiff and the Autodialed Stop Call Class were made after any consent had been expressly revoked by responding with an opt-out request, such as "STOP" or similar language.  This alone violates the TCPA.

68.     Additionally, Defendant's supposed opt out mechanism isn't cost free. Among other things, it requires the transmission of data from the user's cellular telephone that results in a reduction of the user's allowable data.

69.     Based on such conduct, Defendant has violated 47 U.S.C. § 227(b)(1)(A)(iii).

70.     Defendant violated 47 C.F.R. § 64.1200 (d) by initiating calls for telemarketing purposes to residential and wireless telephone subscribers, such as Plaintiff and the Autodialed Stop Call Class, without instituting procedures that comply with the regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls from them.

71.     As a result of such conduct, Plaintiff and the other members of the Autodialed Stop Call Class are each entitled to, under 47 U.S.C. § 227(b)(3)(B), a minimum of $500.00 in damages for each violation of such act.

72.     In the event that the Court determines that Defendant's conduct was willful and knowing, it may, under 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiffs and the other members of the Autodialed Stop Call Class.

**THIRD CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Do Not Call Registry Class)**

73.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

74.     47 U.S.C. § 227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the

regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

75.    The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

76.    47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the FCC's July 3, 2003 Report and Order, which in turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.[7]

77.    47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entitles making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

> (2) Training of personnel engaged in telemarketing. Personnel engaged in any

---

[7] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) Available at https://apps.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf

aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . . .

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

78.    Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to wireless telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government. These consumers requested to not receive calls from Defendant, as set forth in 47 C.F.R. § 64.1200(d)(3).

79.    Defendant also violated 47 C.F.R. § 64.1200(d) by failing to have a written policy of dealing with do not call requests, by failing to inform or train its personnel engaged in telemarketing regarding the existence and/or use of any do not call list, and by failing to internally record and honor do not call requests.

80.    Defendant made more than one unsolicited telephone call to Plaintiff and other members of the Do Not Call Registry Class within a 12-month period without their prior express consent to receive such calls. Plaintiff and other members of the Do Not Call Registry Class never provided any form of consent to receive telephone calls from Defendant, and/or Defendant does not have a current record of consent to place telemarketing calls to them.

81.    Defendant violated 47 C.F.R. § 64.1200(d) by initiating calls for telemarketing purposes to residential and wireless telephone subscribers, such as Plaintiff and the Do Not Call Registry Class, without instituting procedures that comply with the regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls from them.

82.    Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are each entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

83.    To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**PRAYER FOR RELIEF**

84.     An order certifying the Classes as defined above, appointing Plaintiff as the representative of the Classes, and appointing her counsel as Class Counsel;

85.     An award of actual monetary loss from such violations or the sum of five hundred dollars ($500.00) for each violation, whichever is greater all to be paid into a common fund for the benefit of the Plaintiff and the Class Members;

86.     An order declaring that Defendant's actions, as set out above, violate the TCPA;

87.     A declaratory judgment that Defendant's text-messaging equipment constitutes an automatic telephone dialing system under the TCPA;

88.     An order requiring Defendant to disgorge any ill-gotten funds acquired as a result of its unlawful text-messaging practices;

89.     An order requiring Defendant to identify any third-party involved in the autodialed text messaging as set out above, as well as the terms of any contract or compensation arrangement it has with such third parties;

90.     An injunction requiring Defendant to cease all unsolicited autodialed text-messaging activities, and otherwise protecting the interests of the Classes;

91.     An injunction prohibiting Defendant from using, or contracting the use of, an automatic telephone dialing system without obtaining, and maintaining records of, call recipient's prior express written consent to receive text messages made with such equipment;

92.     An injunction prohibiting Defendant from contracting with any third-party for marketing purposes until they establish and implement policies and procedures for ensuring the third-party's compliance with the TCPA;

93.     An injunction prohibiting Defendant from conducting any future telemarketing activities until they have established an internal Do Not Call List as required by the TCPA;

CLASS ACTION COMPLAINT – 20

94.    An award of reasonable attorneys' fees and costs to be paid out of the common fund prayed for above; and

95.    Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully Submitted,

**SANDRA POON**, individually and on behalf of Classes of similarly situated individuals

Dated: July 25, 2017                    By: __/s/_____

Joshua Pond on Behalf of Plaintiff

Law Office of Siefman and Pond LLC
Joshua Pond
707 SW Washington Street
Suite 1410
Portland, OR 97205
503-726-1716
joshua@bettercallalawyer.com

Steven L. Woodrow*
swoodrow@woodrowpeluso.com
Patrick H. Peluso*
ppeluso@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 E Mexico Avenue, Ste. 300
Denver, Colorado 80210
Tel: 720-213-0675

Blake J. Dugger*
law@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN, P.A.
1011 W. Colter St., #236
Phoenix, Arizona 85013
Telephone: (602) 441-3704
Facsimile: (888) 498-8946

*pro hac vice application to be filed

Attorney for Plaintiff and the Classes